PIERCE (MANDELL v.). See Case No. 9,-008.

PIERCE (NATIONAL STATE BANK v.). See Case No. 10,052.

———

## Case No. 11,145.

### PIERCE v. PATTON.

[Gilp. 435.] [1]

District Court, E. D. Pennsylvania. May Term, 1833.

SEAMEN — DETENTION IN JAIL — DEDUCTION FROM WAGES—EXPENSE OF MEDICAL ATTENDANCE ON SHORE—DISEASE CONTRACTED BY VICE.

1. Where a seaman is detained in gaol under the provisions of the act of 20th July, 1790, the cost of his commitment and support there, and also the charge for a person employed in his place, are to be deducted from his wages.

2. Where a seaman, in a foreign port, is taken on shore at his own solicitation, from a vessel properly provided with a chest of medicines, and there receives medical attendance and advice, the expenses thereof are to be deducted from his wages.

[Cited in Richardson v. The Juillette, Case No. 11,784.]

[Cited in Holt v. Cummings, 102 Pa. St. 215.]

3. Where a seaman contracts disease by his own vices or faults, and in defiance of the counsel and command of his superior officers, the vessel is not chargeable for the expenses of his cure.

[Cited in The Ben Flint, Case No. 1,299.]

This was a claim by [William Pierce] the libellant for wages, amounting to seventy-nine dollars and seventy-eight cents, earned, as he alleged, during a voyage in the brig Enterprise [James Patton, owner], from Philadelphia to St. Jago and back. It appeared that on the outward voyage the vessel touched at Wilmington, in North Carolina, where the libellant was detained a few days in gaol, under the provisions of the act of 20th July, 1790. It also appeared, that by the indulgence of his own vices and gross negligence, in opposition to repeated warnings, he became so ill, that while at St. Jago, although there were excellent medicines on board the brig, he desired he might be taken on shore and receive the advice and attend-

1 [Reported by Henry D. Gilpin, Esq.]

ance of a physician in the place. For the expenses incurred in consequence of these circumstances, the respondent claimed a deduction from the wages.

Mr. Grinnell, for respondent.

It is contended: 1. That the wages were all forfeited by desertion. 2. That there were a payment and set off, arising from moneys laid out for the libellant exceeding the amount of wages. They occurred in consequence of his desertion and misconduct. The account leaves a balance of two dollars and ninety-two cents due to the respondent, even admitting that there was no forfeiture by the desertion. The physician's bill, charged by him to the libellant, is thirty dollars, and the expenses of the boarding and nursing on shore were twenty-two dollars and twenty-five cents, making together fifty-two dollars and twenty-five cents, all paid by the captain of the brig. Other payments and charges are claimed amounting in the whole to seventy-eight dollars and seventy cents.

Mr. Randall, for libellant.

There is no evidence of some of the items charged to be paid to libellant at St. Jago. We do not dispute the gaol fees paid at Wilmington, North Carolina; nor the charge for hiring a man in his place. As to the charges for medical attendance and nursing, the libellant denies his liability for them. All the decisions say that the ship must find a nurse for a sick seaman. The charge for nursing and boarding fall on the ship. 1 Pet. Adm. Dec. lxxiv.; Laws of Wisbuy, art. 19; Laws of the Hanse Town, art. 45.

Mr. Grinnell, for respondent, in reply.

If there are good and sufficient accommodations on board the vessel for a sick seaman, that is the place where he should be nursed and attended. Even in the case of a contagious disease, if he is put on shore at his own request, and not by the captain for the convenience or safety of the ship, the seaman is chargeable with the expenses incurred by his removal, for boarding, medical attendance, and nursing. So if the seaman engaged to pay the expenses; or if it can be gathered that such was the understanding of the parties, when he was put on shore, they shall be charged to him. There is, in this case, satisfactory evidence that such was the understanding. But the sickness of the libellant was brought upon him by his own default and obstinacy. The men who slept on deck, as the libellant, contrary to orders, would do, were sick; those who slept below were not so. This is fully proved.

HOPKINSON, District Judge. The payment of the wages, in this case, is resisted on two grounds. 1. An alleged desertion of the libellant, by leaving the ship before she was discharged, and her cargo delivered.

2. A set off or credit is claimed by the respondent, for moneys paid for the libellant, for medical attendance upon and nursing him during a sickness at St. Jago, exceeding, with some other charges, the amount of his wages.

| | |
|---|---|
| The medical and nursing bill amounts to | $52 25 |
| Gaol fees and labour hired in the place of the libellant, at Wilmington, not disputed | 11 25 |
| Advance of wages and hospital fees.... | 15 20 |
| | $78 70 |

There is a charge of two dollars and sixty-nine cents, of which no exact proof is given, but the mate of the brig, the only witness examined, says that the captain advanced some money to Pierce at St. Jago, but he cannot say to what amount. The wages, from 15th May to 5th November, at fourteen dollars a month, will amount to seventy-nine dollars and seventy-eight cents. The charges made by respondent are seventy-eight dollars and seventy cents, exclusive of the two dollars and sixty-nine cents. This would leave a balance of but one dollar and eight cents due to libellant; but as the mate swears to an advance of some money at St. Jago, and the captain has charged two dollars and sixty-nine cents, we may reasonably consider this small balance to be absorbed in that payment; provided the other charges against the libellant are admissible.

Of the first ground of defence, the alleged desertion of the libellant before the brig was discharged, I shall say nothing; it is not necessary. The decision of the case will turn on the legality of the charge of fifty-two dollars and twenty-five cents for medicine, medical attendance, and boarding the libellant while sick on shore at St. Jago. It is clearly proved that the brig had a medicine chest fully supplied with the requisite and usual medicines. It is also fully proved that the libellant was taken on shore by his own desire and request; and that he seemed to consider that it was to be at his own charge. The bill was charged to him, and not to the captain or ship, and when shown to him he made no objection to it or to his liability, but that it was too high. Being told that these charges absorbed all his wages, he made no demand of them, but acquiesced from the 5th of November, when the voyage ended, until the 20th of February, when he commenced this suit. These are strong circumstances to show that he knew or believed that the extraordinary expenses of his going on shore to be nursed and attended by a physician, were to be charged to himself. I shall not, however, rest my decision upon this point. The circumstances in which a ship is liable for curing a sick seaman, have frequently come under the consideration of courts of admiralty. Although some judges have inclined to be a little more liberal to mariners than others, the main principles are well settled, and generally adopted. Certain-

ly on one point there is no doubt or difference, and that is, that when a seaman has contracted the disease by his own vices or fault, the ship is not chargeable with his cure. This then is the question in this case; a question of fact. We have no evidence but that of Mr. Thomas, the mate of the brig, who has not been impeached, and seems to be worthy of full credit. From his testimony it is undeniable that the libellant contracted the sickness in question by the indulgence of his vices; by gross negligence in opposition to repeated warnings; and by a determined obstinacy which resisted at once counsel and command.

Decree: That the libel be dismissed.